IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **JACK A. THAYER** | ) | CASE NO. 05-CV-07275 |
| | ) | |
| Plaintiff, | ) | Judge James G. Carr |
| | ) | |
| v. | ) | **PLAINTIFF'S SUR-REPLY IN SUPPORT OF** |
| | ) | **HIS OPPOSITION TO DEFENDANTS MOTION** |
| **FULLER & HENRY, LTD.,** *ET AL.*, | ) | **FOR SUMMARY JUDGMENT** |
| | ) | |
| Defendants. | ) | David W. Zoll, Esq. (0008548) |
| | ) | Pamela A. Borgess, Esq. (0072789) |
| | ) | ZOLL & KRANZ, LLC |
| | ) | 6620 W. Central Avenue, Suite 200 |
| | ) | Toledo, Ohio 43617 |
| | ) | Phone: (419) 841-9623 |
| | ) | Facsimile: (419) 841-9719 |
| | ) | Email: david@toledolaw.com |
| | ) | pamela@toledolaw.com |
| | ) | |
| | ) | Attorneys for Plaintiff, |
| | ) | Jack A. Thayer |

\*\*\*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................i

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................2

ARGUMENT................................................................................................................................3

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FAILES FOR TWO
INDEPENDENT REASONS.......................................................................................................3

    I.    THAYER'S MARCH, 30 2004 TERMINATION LETTER TO DEFENDANTS IS THE ONLY AFFIRMATIVE ACT THAYER TOOK TO TERMINATE HIS ATTORNEY-CLIENT RELATIONSHIP WITH DEFENDANTS AND AS SUCH THE STATUTE OF LIMITATIONS MUST ACCRUE FROM THAT DATE ......................................................................................................................3
        a. Defendants' interpretation of the termination rule is flawed and fatal to their arguments that Plaintiff's claims are time-barred. ............................4
        b. Thayer's consultation with Erik Chappell did not amount to a termination of Thayer's attorney-client relationship with Defendants..........................................................................................................8
        c. Even if the Court fails to find Thayer's March 30, 2004 termination letter as conclusive as to the date of the termination of the attorney-client relationship, the Court, at the very least, must find that the evidence presents issues of material fact as to the termination date. ......................................................................................10

CONCLUSION..........................................................................................................................11

CERTIFICATE OF SERVICE ................................................................................................12

## TABLE OF AUTHORITIES

CASE CITATIONS:

*Artromick Intern., Inc. v. Drustar, Inc.*, 134 F.R.D. 226, (S.D.Ohio,1991). .....................................4

*Burdge Law Office Co., L.P.A. v. Wilson*, 2005 WL 1714198, *3 (Ohio App. 2 Dist.,2005)............................................................................................................................8

*Chapman v. Basinger*, 71 Ohio App.3d 5, 592 N.E.2d 908, (Ohio App. 3 Dist., 1991). ..............................................................................................................4, 5, 6, 10, 11

*Chambers v. Melling, Harding, Schuman & Montello*, 2005 WL 1190730 (Ohio App. 8 Dist.,2005) .............................................................................................8, 9

*Feudo v. Pavlik*, 55 Ohio App.3d 217, 563 N.E.2d 351, (Ohio App., 1988)..................................6

*Flynt v. Brownfield, Bowen & Bally*, 882 F.2d 1048, (C.A.6 (Ohio), 1989). ...............................4, 7

*Halliwell v. Bruner* (Dec. 14, 2000) Cuyahoga App. No. 76933 .......................................................8

*Hobbs v. Enz* (June 28, 1996), Franklin App. No. 96APE02-135 .......................................5

*In re Dow*, 132 B.R. 853, (Bkrtcy.S.D.Ohio, 1991). ........................................................................6

*Johnson v. Lapin*, 1995 WL 681102, (N.D.Ohio 1995) ...............................................................4, 7

*Lamberjack v. Graves*, 1991 WL 156541, (Ohio App., 6 Dist., 1991)........................................4, 7

*Mastran v. Marks* (Mar. 28, 1990), Summit App. No. 14270 ................................................4, 5, 10

*Monastra v. D'Amore*, 111 Ohio App.3d 296, 306 (8th Dist. 1996)................................................4

*North Shore Auto Financing, Inc. v. Block*, 100 Ohio St.3d 1531, 2003-Ohio-6458, 800 N.E.2d 47)......................................................................................................................8

*Omni-Food & Fashion, Inc. v. Smith*, 38 Ohio St.3d 385, 528 N.E.2d 941, (Ohio, 1988)..................................................................................................................4, 10

*Savage v. Kucharski* 2006 WL 2796264, *3 (Ohio App. 11 Dist.) .................................................7

*Sinsky v. Gatien*, 2000 WL 1226616, (Ohio App. 9 Dist., 2000) ................................................11

*Taylor v. Oglesby* 2006 WL 664249, *2 (Ohio App. 6 Dist.).........................................................7

*Trickett v. Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A.* (Oct. 26, 2001), 11th Dist. No. 2000-P-0105, 2001 WL 1301557 ......................................................................10

*Wozniak v. Tonidandel*, 121 Ohio App.3d 221, 699 N.E.2d 555, (Ohio App. 8 Dist., 1997)..................................................................................................................................5

*Zimmie v. Calfee, Halter and Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398, (Ohio, 1989). ..................................................................................................................................4

STATUTES:

FedR.Civ.P. 56 (c) ...............................................................................................................3

R.C. 2305.11(A)..................................................................................................................3

Plaintiff Jack A. Thayer ("Thayer") respectfully submits this sur-reply memorandum in further opposition to Defendants' Motion for Summary Judgment Based on the Statute of Limitations.

## PRELIMINARY STATEMENT

In response to Thayer's Opposition, Defendants have desperately attempted to further obfuscate the applicable law and facts in this matter. Defendants originally billed their opening memorandum as offering overwhelming evidence which supported only one conclusion. That promise was short lived. Defendants' confidence in its 'conclusion' was quickly exposed when Thayer filed his Opposition which both set forth a correct statement of law and provided facts apparently sufficient to cause Defendants to promptly:

- Subpoena documents from Attorney Patricia Fugée;
- Subpoena documents from Erik Chappell;
- Take the deposition of Attorney Erik Chappell;
- Move to compel additional documents from Erik Chappell;
- Propound additional interrogatories, requests for admission, and requests for production of additional documents on Thayer;
- Seek out and obtain an affidavit from Attorney Fugée; and
- Seek out and obtain an affidavit from the former President of AVCA, Dean Diver.

Defendants' have offered their Reply Memorandum which claims to now present incontrovertible evidence that can only lead to one 'conclusion'. However, Defendants' Reply simply offers additional evidence, which is again contorted into a new series of invalid propositions amounting to little more than rank speculation.

At the outset, Defendants assert, correctly, that the essential issue for summary judgment is whether or not Thayer affirmatively terminated the attorney-client relationship prior to March 21, 2004. Defendants then move on in a desperate effort, albeit couched with entertaining avian wit, to drain the relevant law of any meaningful application. Their new arguments simply dissect

the truth and fill in the voids with conjecture offered up as 'objective and incontrovertible evidence'. However, much of the offered 'evidence' is simply a gross distortion of the record.

Further, and interestingly and perhaps unintentionally, Defendants jettison the call of Federal Civil Rule of Procedure 56(c) by inviting the Court to weigh the credibility of evidence they present and draw all inferences in their favor. The invitation, however, is necessary to the viability of Defendants' strained construction of applicable law. Despite Defendants' invitation, their new arguments fare no better than their originals and are again wholly unsupported by Ohio case law. As such, the Court should politely decline to expand or redefine existing case law to accommodate Defendants interest is barring this action.

## ARGUMENT

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FAILS FOR TWO INDEPENDENT REASONS.

**I.    Thayer's March, 30 2004 Termination Letter To Defendants Is The Only Affirmative Act Thayer Took To Terminate His Attorney-Client Relationship With Defendants And As Such The Statute of Limitations Must Accrue From That Date.**

Defendants' Reply is noteworthy for its lack of supportive case law underlying their strident factual assertions. In an apparent effort to draw attention away from this, Defendants substitute case law for *ad hominems* and bold pronouncements about applicable legal principles which appear to be their own proposed conclusions of law. The fact of the matter is, that Defendants' motion for summary judgment on the statute of limitations is not supported by any applicable case law.

For purposes of clarity, under Ohio law, an action for legal malpractice must be commenced within one year after the cause of action accrues. Ohio Rev. Code. Ann. §2305.11(A). The Supreme Court of Ohio has adopted two methods of determining the date of

accrual: the discovery rule and the termination rule. *Zimmie v. Calfee, Halter & Griswold* (1989), 43 Ohio St .3d 54, syllabus. A court must employ the rule that produces the later accrual date. Id. It is not disputed that the termination rule produces the later date in this case. What is disputed is what facts amount to a termination of an attorney-client relationship for purposes of initiating the accrual of the statute of limitations.

   a. **Defendants' interpretation of the termination rule is flawed and fatal to their arguments that Plaintiff's claims are time-barred.**

As discussed in more detail *infra*, the question of when an attorney-client relationship terminates is necessarily one of fact. *Johnson v. Lapin*, no. 1995 WL 681102, *2 (N.D. Ohio 1995)(citing *Omni-Food & Fashion, Inc.,* 38 Ohio St. 3d at 388); *Monastra v. D'Amore*, 111 Ohio App.3d 296, 306 (8th Dist. 1996)(finding genuine issues of material fact exists as to termination date, which needed to be resolved by the fact finder and precluded summary judgment). Specifically, the "termination rule" turns on the factual question of whether there was an "affirmative act by either the attorney or the client that signals the end of the relationship." *Chapman v. Basinger* (1991), 71 Ohio App.3d 5, 10, citing *Mastran v. Marks* (Mar. 28, 1990), Summit App. No. 14270. An affirmative act is required to end the attorney-client relationship. *Lamberjack v. Graves,,* 1991 WL 156541 (Ohio App., 6 Dist., 1991); *Flynt v.Brownfield, Bowen & Bally,,* 882 F.2d 1048, 1052. (C.A.6 (Ohio), 1989). The affirmative act must be sufficient to put the other party on notice of the relationship's termination. Id. While an affirmative act may be either express or implied, a court should not look for termination by implication when demonstrative evidence is present showing an unambiguous declaration terminating the attorney-client relationship. See *Artromick Intern., Inc. v. Drustar, Inc.*, 134 F.R.D. 226, 230 (S.D. Ohio, 1991).

Express affirmative acts are overt communications that put the other party on notice that the relationship has ended. Id. Case law is very clear that express affirmative acts are unambiguous written or oral communications expressing termination. See *Wozniak v. Tonidandel*, 121 Ohio App.3d 221, *226-227, (Ohio App. 8 Dist, 1997)(holding attorney-client relationship terminated when attorney told client in no uncertain terms that his firm's engagement was over.) See also *Hobbs v. Enz* (June 28, 1996), Franklin App. No. 96APE02-135; and *Chapman,* 71 Ohio App.3d at 5 (holding that letter from an attorney to a client or vice versa can unequivocally terminate the attorney-client relationship).

In the case at hand, despite Defendants' necessary, but baseless objection, the Court must determine whether Thayer's March 30, 2004 letter was an unambiguous affirmative act that put Defendants on notice that Thayer was terminating the relationship.[1] It is unquestionably clear from not only the explicit terms of the letter, but also from Defendants' April 14, 2004 response, that the March 30, 2004 letter was the first indication, express or otherwise, that Defendants had that Thayer was terminating the relationship.[2]

Defendants use their Reply to challenge the qualification of Thayer's letter, as well as its own April 14, 2004 letter, to serve as affirmative acts. Defendants choose to handle the clear evidence by simply dismissing it as "self-serving" and an "effort by Plaintiff to manipulate the statute of limitations". In making these assertions, Defendants explicitly question the credibility of the evidence and invites the Court to do the same.

Defendants rest their arguments on an assorted collection of facts and questionable inferences they suggest when 'taken as a whole, can lead reasonable minds to only one

---

[1] In their Reply, Defendants state that they do not dispute the existence of the March 30, 2004 letter, only whether the letter has any bearing on terminating the attorney-client relationship.
[2] Defendants also do not dispute David Bainbridge's Reply. The Reply is absolutely clear in its acknowledgement of the termination and details the winding up and transfer of the representation.

conclusion.' That of course being that Thayer terminated the attorney-client relationship with Defendants prior to March 21, 2004. Specifically, Defendants contend that Thayer's 'consultation' with another attorney, regarding matters in which Defendants were providing Thayer representation on, was enough to unilaterally terminate the attorney-client relationship Thayer had with Defendants.

Again, Defendants are ignoring the clear requirements for terminating the attorney-client relationship by an affirmative act. First and foremost, Defendants do appropriately recognize that Ohio courts have made it clear that consultations or discussions with a second lawyer about a case unbeknownst to the first lawyer does not constitute conduct which 'dissolves the essential mutual confidence between attorney and client. See *Feudo v. Pavlik*, (1988) 563 N.E.2d 351, 353. However, they then seek to distinguish Thayer's 'consultation' with Erik Chappell, as being more extensive than case law has recognized as permissible and amounting to conduct inconsistent with Thayer's ongoing relationship with Defendants.[3] Defendants' proposition fails both factually and as a matter of law.

First and foremost, it is not disputed that the "termination rule" turns on the factual question of whether there was an "affirmative act by either the attorney or the client that *signals* the end of the relationship." *Chapman v. Basinger* (1991), 71 Ohio App.3d 5, 10 (Ohio App. 3 Dist., 1991). Defendants imply that despite the requirement that the act *signals* the end of the relationship, that Ohio recognizes no requirement that an attorney or client actually be notified of the affirmative act, calling such requirement 'ludicrous'.

In *In Re Dow*, the court explicitly stated in no uncertain terms that "an affirmative act sufficient to put the other party on notice of the relationship's termination is *required* to end the

---

[3] Defendants conveniently do not suggest that the extent or involvement of a consultation necessarily turns on the complexities of the subject matter. Here, the legal issues are very sophisticated and complex. Further, the matter had be ongoing for years and the documents which have accumulated are overwhelming.

attorney-client relationship." 132 B.R. 853, *858 (Bkrtcy.S.D.Ohio,1991)(emphasis added)(citing to *Lamberjack,* 1991 WL 156541; *Flynt,* 882 F.2d at 1052). The court also stated that the attorney-client relationship is not effectively terminated until both the attorney and the client are put on notice of an affirmative act of termination. Id. (Court, finding no evidence that the filing of a *pro se* motion was sufficient to put the defendants on notice of the attorney-client relationship's termination.) The motion, alone and without additional evidence as to when the defendants received notice of it, does not convince a Court that it was an affirmative act sufficient to put the defendants on notice of the termination.) See also *Johnson,* 1995 WL 681102 at *5, (stating, "[W]hen the physician ends the professional relationship, the patient must be on notice of the termination" for the limitations period to start. To conclude otherwise…would conflict with the termination rule's purpose.)

In *Mastran v. Marks*, the court stated that it was reasonable that a jury could reasonably conclude that where a client's loss of confidence led him to seek other legal advice in order to determine whether to sever the attorney-client relationship, no affirmative act occurred until the delivery of the letter of termination. 1990 WL 34845, *4 (Ohio App. 9 Dist.) Likewise, in *Savage v. Kucharski*, the court held that that the attorney-client relationship ended, at the latest, when the client wrote to his attorney expressing that he had made arrangements for new counsel and instructing his attorney to turn over records. 2006 WL 2796264, *3 (Ohio App. 11 Dist.) It is important to note that the seeking or retaining of other counsel was not considered to be the affirmative act. Other cases have implicitly made this same finding. In *Taylor v. Oglesby*, the court held that the attorney-client relationship terminated when the client, through his new counsel, filed a motion to reopen the appeal in his criminal case based on the claim that client had been denied effective assistance of counsel. 2006 WL 664249, *2 (Ohio App. 6 Dist.) That

the court found the day of the filing to be the affirmative act and not the earlier loss of confidence or the retaining of other counsel, emphasizes the necessity of a client or attorney taking some affirmative act which is capable of signaling to the other party that the relationship is being terminated. Examples of such acts include termination letters, filing of grievances, filing of malpractice actions, and having other counsel file an appeal.

What is clear from relevant case law is that consulting with another attorney does not amount to an affirmative act sufficient to terminate the attorney-client relationship. In fact, courts frequently consider the consultation or even hiring of another attorney a *cognizable* event and not an affirmative act signaling the termination of the attorney-client relationship. See *Halliwell v. Bruner* (Dec. 14, 2000) Cuyahoga App. No. 76933 (stating, that consulting with another attorney amounts to a 'cognizable event'.); (*Burdge Law Office Co., L.P.A. v. Wilson*, 2005 WL 1714198, *3 (Ohio App. 2 Dist.,2005); and (*North Shore Auto Financing, Inc. v. Block,* 100 Ohio St.3d 1531, 2003-Ohio-6458, 800 N.E.2d 47). See also *Chambers v. Melling, Harding, Schuman & Montello*, 2005 WL 1190730 (Ohio App. 8 Dist.,2005) (Noting that it was undisputed that plaintiff was greatly dissatisfied with his representation and that that dissatisfaction, coupled with plaintiff's consultation with, and subsequent hiring of, another attorney, necessarily amounted to a cognizable event for purpose of accrual. However, the court found that the plaintiff's termination letter, sent *after* hiring replacement counsel, was the unambiguous manifestation of plaintiff's desire to terminate his relationship with his attorney.)

    b. **Thayer's consultation with Erik Chappell did not amount to a termination of Thayer's attorney-client relationship with Defendants.**

Defendants' Reply selectively assembles facts and inferences to suggest Erik Chappell went beyond simply reviewing and assessing Thayer' case. Despite Defendants' accusations,

they can point to no incontrovertible evidence that establishes that Thayer terminated his relationship with Defendants prior to March 30, 2004.[4]

There is no evidence to suggest Thayer ever sought out replacement counsel. It is well established that his meeting with Erik Chappell merely arose out of a social function Thayer's wife attended. Further, Thayer has been very clear that his sole purpose for meeting with Erik Chappell was to explore whether Erik might have any approaches to his case that could be taken back to Defendants for consideration.[5] The record reflects that Erik Chappell has been very clear that the scope of his engagement was to review Thayer's case and provide him with an assessment. (Pl. Opp. Mot. S.J., Ex. G) Further, Chappell has unambiguously stated that he never intended to represent Thayer in any matter until on or after March 30, 2004, when he learned Thayer terminated Defendants. (Pl. Opp. Mot. S.J., Ex. G) In fact, Chappell has testified that shortly before this date Thayer approached him about being co-counsel with Defendants, a proposal Chappell rejected. (Pl. Opp. Mot. S.J. Ex. G).

Defendants have hyper-scrutinized Thayer's interaction with Chappell, apparently in the effort to force those interactions to conform with Defendants' interpretation of the law required to terminate an attorney-client relationship for purposes of starting the running of the statute of limitations. Despite their mischaracterization, Defendants at best confuse the truth and create genuine issues of material fact. For instance, there is no evidence that Chappell ever affirmatively held himself out to be Thayer's legal counsel. In fact, Chappell testified in his deposition that he believes he made it clear in a March 17, 2004 phone call to Attorney Patricia

---

[4] Defendants can point to no case law which supports their position. In fact, as stated *supra*, courts have found that even retaining other counsel does not necessary amount to an affirmative act sufficient to terminate attorney-client relationship. *Chambers v. Melling, Harding, Schuman & Montello*, 2005 WL 1190730 (Ohio App. 8 Dist.,2005)

[5] Thayer has stated that at the time he met with Erik Chappell he was spent around $45,000 in legal fees with Defendants and replacing Defendants was not a consideration and that even if had thought about it he would be dissuaded by the simple fact that his case was very complex and he did have the time nor resources to spend that kind of money to bring another attorney up to speed with where Defendants were.

Fugeé that he was evaluating Thayer's case. (Chappell Dep. 142) Defendants have offered Fugeé's affidavit in an effort to present clear evidence that Chappell represented himself as Thayer's attorney. However, Fugeé's affidavit is vaguely inferential and can at best be offered to create an issue of fact. Likewise, Thayer never represented Chappell to be his legal counsel prior to March 30, 2004. Yet Defendants employ Dean Diver's affidavit to suggest otherwise. (Def. Reply Ex. 14) Again, Diver's affidavit is based on inferences and simply creates issues of fact. Further, both Fugée and Diver's testimony can also be qualified as hostile and biased as Thayer and Chappell are currently involved in litigation against same.

As explained in Chappell's affidavit, it was not until on or sometime after March 26, 2004, that Thayer expressed an interest in retaining Chappell's services as co-counsel with Defendants. (Pl. Opp. Mot. S.J., Ex. G). Further, it was not until sometime on or after March 30, 2004 when Thayer informed Chappell that he was terminating Defendants' representation and was interested in retaining Chappell. There is absolutely no clear and unambiguous evidence conclusively establishing otherwise.

### c. Even if the Court fails to find Thayer's March 30, 2004 termination letter as conclusive as to the date of the termination of the attorney-client relationship, the Court, at the very least, must find that the evidence presents issues of material fact as to the termination date.

The issue of when an attorney-client relationship is terminated is a question of fact. *Trickett v. Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A.* (Oct. 26, 2001), 11th Dist. No. 2000-P-0105, 2001 WL 1301557, at *3, citing *Omni-Food & Fashion, Inc. v. Smith* (1988), 38 Ohio St.3d 385, 388, 528 N.E.2d 941. The termination rule turns on the factual question of whether there was an affirmative act by either the attorney or the client that signals the end of the

relationship." *Chapman v. Basinger* (1991), 71 Ohio App.3d 5, 10, 592 N.E.2d 908, citing *Mastran v. Marks* (Mar. 28, 1990), Summit App. No. 14270.

The termination of the attorney-client relationship depends, not on a subjective loss of confidence on the part of the client, but on an affirmative act by either the attorney or the client that signals the end of the relationship. For a trial court to grant summary judgment on this basis, such an act must be clear and unambiguous, so that reasonable minds can come to but one conclusion from it. Where an act can be reasonably viewed as other than a clear, unambiguous signal that the attorney-client relationship is at an end, summary judgment is improper. *Mastran v. Marks*, 1990 WL 34845, *4 (Ohio App., 1990). See also *Sinsky v. Gatien* 2000 WL 1226616, *2 (Ohio App. 9 Dist.,2000)

## CONCLUSION

Notwithstanding Defendants' introduction of additional evidence and its distortion of the applicable law, the issue before the Court is straightforward. On March 30, 2004, Thayer conclusively and unequivocally terminated his relationship with Defendants. As such, the Court should deny Defendants' Motion for Summary Judgment on the Statute of Limitations or at a minimum determine that genuine issues of material fact exist. Granting Defendants' Motion would adopt and expand legal propositions that would inject uncertainty into the existence of attorney-client relationships and further allow attorneys to unjustifiably insulate themselves from their wrongs. In this instance, Defendants cannot honestly point to any evidence that demonstrates they were cognizant, as of March 30, 2004, of affirmative acts which dissolved the essential confidence of their relationship with Thayer. As such, they should not now enjoy the privilege of looking back to find and adopt a "loss of confidence". Defendants clearly

understood the March 30, 2004 to be an affirmative act terminating their counsel and they should not now be heard to state otherwise.

/s/ David W. Zoll
David W. Zoll
*Counsel for Plaintiff Thayer*

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by the court's electronic filing system.

/s/ David W. Zoll
David W. Zoll
*Counsel for Plaintiff Thayer*